Filed 4/28/21  In re A.S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | B306474 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP05946A-C) |
| Plaintiff and Respondent, | |
| v. | |
| J.R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother J.R. appeals the juvenile court's order sustaining a subsequent petition under Welfare and Institutions Code section 342 as to her three children, and the dispositional order requiring monitored visitation. (All further statutory references are to this code unless otherwise indicated.) Mother contends there was not substantial evidence that she physically abused then three-year-old E.S. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family has an extensive child welfare history, with a substantiated referral in February 2015, after mother tested positive for PCP at the birth of her first son, A.S. The juvenile court sustained allegations that mother used marijuana and PCP while pregnant with A.S., and she suffered from bipolar disorder and depression. A.S. was allowed to remain with mother with family maintenance services but was detained in January 2016 after mother relapsed and tested positive for methamphetamine and alcohol. Family reunification services were terminated in May 2016, but mother filed a section 388 petition and was granted additional time to reunify. A.S. was returned to mother in November 2017, and jurisdiction was terminated in May 2018. This division affirmed the jurisdictional order in that case on appeal, *In re A.R.* (Feb. 29, 2016, B265399) [nonpub. opn.].

The Los Angeles County Department of Children and Family Services (Department) received a referral for physical abuse in December 2015, alleging that mother became frustrated because of A.S.'s crying. Mother told her mental health provider that she "grabbed [A.S.] and slammed him on the bed because he would not stop crying." The referral was closed as unfounded after mother denied the incident, and because mother was already participating in family maintenance services.

2

The Department also received a referral in May 2019 that mother was smoking drugs from a pipe, that one of the children was seen holding a drug pipe, and that mother left the children home alone without supervision. The referral was deemed inconclusive.

Mother has a criminal history for burglary, assault with a deadly weapon, and battery.

The family again came to the attention of the Department following a July 2019 referral that mother was abusing drugs, failed to supervise or care for her children, exposed her children to gang members, and the family home was filthy and infested with rats.

The investigating social worker noted that mother's three boys, then four-year-old A.S., two-year-old E.S., and one-year-old B.S., were appropriately dressed, free of significant marks or bruises, and comfortable in mother's presence. Mother denied physically disciplining her children, and A.S. reported that mother used timeouts for discipline. Mother admitted she had a history of methamphetamine abuse, but claimed she had last used four years earlier. She also used to be gang affiliated but was no longer involved with gangs.

The family home was dirty and disorganized. There were significant safety hazards, such as a sharp knife on the nightstand, a gun within one of the nightstand drawers, and an open container of powder detergent on the bathroom floor. There was very little food in the home, and a half empty bottle of vodka. There was also a marijuana pipe in the nightstand. Mother claimed it belonged to a friend.

Mother displayed paranoid behavior, accusing the social worker of stealing something from the kitchen. According to mother's landlord, numerous tenants complained about a

chemical odor coming from mother's home, and drug activity, with people constantly coming and going from the apartment.

Mother agreed to drug test on July 25, 2019, but then failed to test. She was a no show for another test on July 31. She later tested negative on August 1, 15, and 27, 2019.

At an unannounced home visit on August 2, 2019, mother had addressed the safety concerns in her home, except the home was still very dirty. Toys were strewn about the home, and the children were tripping over them.

The Department recommended the children remain home with mother with family preservation services. At the September 2019 detention hearing, the court allowed the children to remain with mother on the condition that she allow the Department to make unannounced home visits, and that she tested clean and cooperated with services.

At a September 2019 home visit scheduled in advance with mother, A.S. was unkept, with dirt on his face, and clothes that did not fit. E.S. was dirty and naked. The children did not have bruises indicative of abuse and were comfortable with mother. Mother had a flat affect. She was applying makeup during the interview, while the children were running around, jumping on top of each other, and yelling and crying. She did not intervene or redirect the children.

At another scheduled visit, a couple of days later, the house was a mess, the floor was sticky, and the bathtub and toilet were clogged and not working. There was a razor on the bathroom floor, within reach of the children. There were dishes and other items piled on the stove and counters, including a large empty container of beer.

According to the maintenance worker for mother's complex, tenants often called to complain about mother using drugs, and

4

the children screaming and being unclothed. The tenants were unwilling to speak with the Department because they believed mother to be gang affiliated, and they feared retaliation.

Mother failed to drug test seven times between September 20 and November 1, 2019, and tested negative once. She also failed to participate in an Evidence Code section 730 evaluation as ordered by the court. She did not return the Department's calls, and was unavailable when the Department attempted to make an unannounced home visit. Therefore, the Department recommended that the children be removed from mother.

Mother was not present at the November 5, 2019 adjudication hearing. The juvenile court sustained allegations concerning mother's unsafe home and mental health issues.

The Department made an unannounced home visit the following day. Mother initially tried to prevent the social worker from entering her home, but then allowed her to enter. The conditions were "deplorable." A.S. was laying on the floor next to a pool of his own vomit. The children were filthy. Mother reported the home was infested with rats. The social worker saw a mouse run across the room and roaches all over the walls. The electrical outlets were not working, and there were exposed wires coming out of the walls. A knife was accessible to the children. Mother was overwhelmed. Her car and phone were not working. The refrigerator and toilet were not working. The social worker observed rotten milk and a jug containing urine in the living room.

The children were detained from mother and transported to the hospital, where it was determined that E.S. needed a forensic exam due to the many bumps and bruises on his body and his severe diaper rash, which caused him to cry in pain during diaper

changes. A.S. required treatment in the emergency room due to his high fever. The children were released to paternal grandfather, who later reported that A.S. and E.S. were vomiting and very ill.

The forensic examination was conducted on November 5, 2019. The social worker was unable to provide the evaluator with any information about how E.S. had been injured. E.S. had numerous pale pink bruises on the left side of his body, left leg, right arm, right leg, forehead, left cheek, and buttocks. There were old scars on his right and left legs, right hand, and back. There was also a hematoma with a pale pink bruise on his forehead, a scratch on his forehead, a pink bump to the right of his groin, a pale blue bruise on his left thigh, diaper rash on his testicles, a red scratch on his right knee, and discoloration on the fourth digit of his left hand. The evaluator concluded his injuries were "suspicious for abuse. Further information needed." Photos taken during the exam showed extensive injuries over much of the child's body.

Mother told the Department that E.S. and his brothers "fight too much." She often had to put A.S. in timeout, and would spank him because he would hit E.S. The children would also hit each other with toys. Mother was "always stressed out" because the children "have too much energy." She admitted she was beaten as a child, and that she did not want her children "to go through that."

Mother continued to display unstable behaviors. She failed to drug test on November 12, 2019, or report for her scheduled Evidence Code section 730 evaluation. She admitted to using drugs on November 3, 2019. Mother was arrested on November 22, 2019, and was convicted of petty theft. Mother's phone contact with the children was inappropriate. She told

6

them she had not eaten, and that the "baby in her tummy" had not eaten either.

On December 5, 2019, the Department filed a section 342 subsequent petition with allegations under section 300, subdivisions (a), (b), and (j) that the children were at risk of harm because E.S. suffered numerous injuries that "would not ordinarily occur except as the result of deliberate, unreasonable and/or neglectful acts by . . . mother . . . ." The disposition hearing on the section 300 petition was ordered to trail adjudication of the section 342 subsequent petition.

The children had to be placed in foster care after paternal relatives complained that mother threatened them, telling them she is an active gang member.

The social worker interviewed A.S. during a visit with mother. Mother was attentive to the children, and they appeared to enjoy the visit with her. A.S. reported that mother "hits me with a stick. I don't know how many times." Mother encouraged A.S. to "tell the truth" and A.S. responded, "Yes, you do hit me with a stick." A.S. then became distracted, and the social worker was unable to follow up about his remarks. Neither E.S. nor B.S. was able to provide a meaningful statement. All the children seemed comfortable with mother. They were clean and did not have any suspicious bruises.

Mother again denied she hit her children. She attributed E.S.'s bruises to rough play with his brothers. She also reported that one of her male friends played rough with the boys. Mother admitted she should have supervised the children better but was "busy doing things I shouldn't have been doing." She admitted she was "getting high and not taking care of her children." However, she was now sober.

7

Mother was a no show for drug tests on December 2 and 11, 2019, but tested negative four times between November 27 and December 30, 2019. Mother reported she was participating in a drug program, mental health services, and a parenting program.

The Department's March 2020 interim review report noted that mother denied suffering from mental health problems, even though her Evidence Code section 730 evaluation, completed in February 2020, diagnosed mother with bipolar disorder, posttraumatic stress disorder, and stimulant abuse. According to the evaluation, mother has a history of substance and alcohol use starting at the age of nine, and a history of depression, bipolar disorder, posttraumatic stress disorder, mood swings, angry outbursts, and impulsive behavior. She also suffered multiple psychiatric hospitalizations as a child. The evaluation also noted mother was five months pregnant and therefore did not want to take psychotropic medications. The evaluator recommended therapy and substance abuse classes.

The adjudication and disposition hearings were continued a number of times due to the COVID-19 pandemic.

Because of the pandemic, mother's visitation with the children was over the phone and by video chat. The Department had no concerns regarding her visitation. Mother provided seven negative drug tests between February 19, 2020, and April 10, 2020. She had been living in a sober living home since January 2, 2020, and was an "exceptional resident," obeying all house rules, regularly drug testing, attending NA meetings, meeting with her therapist, and attending her obstetric appointments for her pregnancy.

The Department's June 2020 interim review report noted mother tested negative for drugs five times between April 13, 2020, and June 1, 2020. But visitation had become erratic, with

8

mother missing some phone and video visits.  Her visits were sometimes of poor quality, with mother muting the children and putting them on hold to talk to other people in the background. Mother was continuing to participate in her programs, mostly by telehealth due to the pandemic.  Mother's therapist reported mother was at times difficult to engage and did not have a lot of insight into her triggers.  The therapist was concerned mother might be overwhelmed with caring for her three children and a new baby.  Mother sometimes missed therapy sessions.  She was only "somewhat" engaged during her sessions.

Mother had resumed her relationship with the father of E.S. and B.S., who had been released from prison during the pendency of this case.  They were living together at the sober living house.  Father has an extensive criminal history.  His CLETS report has 44 entries dating back to 2003, including robbery, firearm possession, possession of controlled substances, assault with a deadly weapon, and being an addict in possession of a firearm.  The social worker warned mother that father may hinder her progress, but she told the social worker she intended remain with him.  Father refused to drug test or participate in services.  Mother had previously reported domestic violence in her relationship with father.

On June 24, 2020, the juvenile court sustained the section 342 petition, and removed the children from mother.  The court found that "[b]ased upon the presumptions in 355.1, the court finds by a preponderance of the evidence" that the allegations are true.  The court ordered mother's visitation to be monitored, that she participate in a full six-month drug program, random testing, a 12-step program, parenting classes, and counseling.  This timely appeal followed.

# DISCUSSION

## 1.    Jurisdiction

Mother contends substantial evidence does not support the finding that she abused E.S. or presented a current risk of harm to her children.  She argues the presumption in section 355.1 is inapplicable because the forensic examination did not conclude E.S.'s injuries resulted from abuse, finding only that his injuries were suspicious, and that more information was needed.

We review the entire record to determine whether substantial evidence supports the juvenile court's jurisdictional findings, resolving all conflicts and drawing all reasonable inferences in support of the findings.  (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

Section 355.1, subdivision (a) provides that "[w]here the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, . . . that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300."  The presumption affects the burden of producing evidence.  (§ 355.1, subd. (c).)  Once the presumption is established, the "burden of producing evidence 'shifts to the parents the obligation of raising an issue *as to the actual cause of the injury* or the fitness of the home.' "  (*In re D.P.* (2014) 225 Cal.App.4th 898, 903.)

The forensic examination revealed numerous suspicious injuries all over E.S.'s body.  The Department had received a referral of physical abuse as to E.S.'s older brother, after mother admitted to her therapist she often became frustrated with A.S. because of his crying, and had "slammed him on the bed because

10

he would not stop crying." A.S. also told the social worker mother disciplined him by hitting him with a stick, and mother admitted to spanking the child. While there was evidence the children engaged in rough play, this was not a plausible explanation for E.S.'s injuries, as the children had never before had any suspicious bruises, notwithstanding their often boisterous behavior. Moreover, the injuries occurred at a time when mother was clearly overwhelmed, using drugs, and living in "deplorable" conditions.

Mother also contends there was no current risk of harm at the time of the hearing on the subsequent petition, reasoning more than six months had passed between the events and the hearing, and that mother had engaged in services. Even though mother was making progress in addressing her issues, the evidence amply supports a finding that mother posed a risk to the children. She had threatened paternal relatives, and witnesses were afraid to talk to the Department because of mother's gang affiliation. Mother denied suffering from mental health issues even though she had been diagnosed with several disorders. She had often failed to comply with court orders, missed many drug tests, and failed for months to submit to an Evidence Code section 730 evaluation. Mother's therapist reported that mother lacked insight, and would likely be overwhelmed by her children, especially with a new baby on the way. Mother had resumed her relationship with father, who refused to cooperate with the Department and had an extensive and violent criminal history. Substantial evidence supports the juvenile court's findings.

## 2. Disposition

Mother challenges the juvenile court's monitored visitation order, arguing there is no substantial evidence the children would be at risk if she had unmonitored contact with them. We

11

review an order setting visitation terms for an abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) We see no abuse of discretion. The evidence discussed *ante* amply support's the court's finding that the children were at risk of harm if mother were allowed to have unsupervised contact with them.

## DISPOSITION

The orders are affirmed.


GRIMES, J.


WE CONCUR:


BIGELOW, P. J.


STRATTON, J.

12